IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SARKISSIAN INTERIORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 20-cv-02129-LKG |
| v. | ) | |
| | ) | Dated:  March 10, 2022 |
| SAMER ZEITOUN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

I.    INTRODUCTION

Plaintiff, Sarkissian Interiors, Inc. ("Sarkissian"), brings this civil action against defendant, Samer Zeitoun ("Zeitoun"), alleging breach of contract, quantum meruit, and fraud claims related to a construction project performed by Sarkissian at Zeitoun's restaurant.  *See generally* Am. Compl., ECF No. 31.  Zeitoun has moved for summary judgment in his favor, pursuant to Fed. R. Civ. P. 56, on the issues of:  (1) whether Sarkissian can enforce the contract at issue as an unlicensed contractor in the Commonwealth of Virginia; (2) whether Sarkissian can recover under a theory of quantum meruit; and (3) whether the economic loss rule bars Sarkissian's fraud claims.  *See generally* Def. Mot., ECF No. 45; Def. Mem., ECF No. 45-2.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2021).  For the reasons set forth below, the Court **GRANTS** Zeitoun's motion for summary judgment and **DISMISSES** the amended complaint.

1

II.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.      **Factual Background**

This civil action involves breach of contract, quantum meruit, and fraud claims related to a construction project performed by Sarkissian at Zeitoun's restaurant. *See generally* Am. Compl. Specifically, Sarkissian alleges that Zeitoun breached the parties' oral contract (the "Contract") by failing to satisfy the total remaining balance due under the Contract after Sarkissian completed the work. *Id.* at ¶ 11.

The amended complaint contains three counts against Zeitoun, namely: (1) breach of contract (Count I); (2) quantum meruit (Count II); and (3) fraud (Count III). *See id.* at ¶¶ 19-34. As relief, Sarkissian seeks to recover punitive and monetary damages from Zeitoun. *Id.*

As background, Sarkissian is a Maryland corporation doing business in Montgomery County, Maryland, with its principal place of business located in Gaithersburg, Maryland. *Id.* at ¶ 1. Sarkissian is also registered to do business in the Commonwealth of Virginia.[2] *Id.* Zeitoun is a chef and the owner of Zenola restaurant, which is located in Vienna, Virginia. *Id.* at ¶ 3; Def. Mem. at 2.

In January 2019, Zeitoun hired Sarkissian to perform certain construction work at Zeitoun's restaurant. Am. Compl. at ¶ 19-20. The parties agree that they entered into an oral contract for this purpose and that the total amount due under the Contract is $506,517.50. Def. Mot. Ex. 5, ECF No. 45-4; Am. Compl. at ¶ 20. It is undisputed that Zeitoun paid Sarkissian $410,000.00 for this work. Am. Compl. at ¶ 11; Def. Mem. at 3.

It is also undisputed that Sarkissian is not a licensed contractor in Virginia. Def. Mem. at 2; *see generally* Am. Compl. Sarkissian has entered, however, into a joint venture with North American Construction Corp. ("North American"), a Virginia corporation that has a Virginia contractor's license. *See* Am. Compl. at ¶ 2; *see also* Def. Ex. 4, ECF No. 45-4 (Joint Venture Agreement).

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl."); defendant's motion for summary judgment ("Def. Mot.") and memorandum in support thereof ("Def. Mem."); and exhibits attached thereto ("Def. Ex.").

[2] Sarkissian Interiors is owned by Arshag Sarkissian and that Mr. Sarkissian also owns 60% of North American. Def. Mem. at 2; Am. Compl. at ¶ 5.

In the amended complaint, Sarkissian alleges that Zeitoun failed to make certain payments required to satisfy the remaining balance due for the construction work performed at Zenola's in June 2019, and that Zeitoun owes it an additional $199,362.50 for this work.  Am. Compl. at ¶ 11.  Sarkissian also alleges that Zeitoun requested an advance of funds to pay contractors for the remaining work for the construction project.  *Id*. at ¶ 14.  In addition, Sarkissian alleges that Zeitoun entered an agreement with his landlord to obtain the funds needed to pay for the remaining construction work, but that Zeitoun retained a portion of these funds instead.  *Id*. at ¶¶ 14-16.

Lastly, Sarkissian alleges that Zeitoun induced Sarkissian to advance him certain funds based upon a promise to reimburse these funds with the proceeds from a real estate sale.  *Id.* at ¶ 33.  But, again, Sarkissian alleges that it received no funds from Zeitoun.  *Id*. at ¶ 18.

### B.      Procedural History

On May 29, 2020, Sarkissian initiated this action in the Circuit Court of Montgomery County, Maryland.  *See* Compl., ECF No. 6; Notice of Removal, ECF No. 1.  Zeitoun answered the complaint on August 6, 2020.  *See* Ans., ECF No. 12.

On July 21, 2020, Zeitoun removed the case to this Court.  *See* Notice of Removal. Sarkissian filed an amended complaint on January 14, 2021.  *See* Am. Compl.  Zeitoun answered the amended complaint on June 3, 2021.  *See* Ans. Am. Compl., ECF No. 42.

On June 25, 2021, Zeitoun filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56.  *See* Def. Mot, Def. Mem.  Sarkissian filed a response in opposition to Zeitoun's motion for summary judgment on July 9, 2021.  *See* Pl. Resp., ECF No. 48.  Zeitoun filed a reply in support of his motion for summary judgment on July 20, 2021.  *See* Def. Reply, ECF No. 49.  In addition, on July 25, 2021 Sarkissian filed a document entitled "response to correct the record," which the Court treats as sur-reply and grants Sarkissian leave to file.  *See* Pl. Sur-Reply, ECF No. 50.

### III.    LEGAL STANDARDS

### A.      Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to

3

judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C*., 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Liberty Lobby*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### B.      Breach Of Contract Claims

The Contract at issue was formed in Maryland and it is undisputed that Maryland law governs this contract dispute. *See* Am. Compl. at 3-4; *see generally* Def. Mem. (the parties do not dispute that the Contract was formed in Maryland).  The Court of Appeals of Maryland has held that:

> [A] contract entered into by an unlicensed person engaged in a trade,
> business or profession required to be licensed, and made in the course of
> such trade, business or profession, cannot be enforced by such person, if it
> appears that the license required by the statute is, in whole or in part, for the
> protection of the public, and to prevent improper persons from engaging in
> such trade, business, or profession.

*Goldsmith v. Mfrs.' Liab. Ins. Co.*, 132 Md. 283, 283 (Md. 1918).  And so, "if a statute requiring
a license for conducting a trade, business or profession is regulatory in nature for the protection
of the public, rather than merely to raise revenue, an unlicensed person will not be given the
assistance of the courts in enforcing contracts within the provisions of the regulatory statute
because such enforcement is against public policy."  *Harry Berenter, Inc. v. Berman*, 258 Md.
290, 293 (Md. 1970) (holding that a contractor not licensed pursuant to the Maryland Home
Improvement Law could not enforce a mechanic's lien for labor and materials expended in
repairs to the home, because the Maryland Home Improvement Law is a regulatory statute for
the protection of the public and is not merely a revenue measure).

In addition, this Court has long recognized that "[t]he mere negligent breach of a
contract, absent a duty or obligation imposed by law independent of that arising out of the
contract itself, is not enough to sustain an action sounding in tort."  *Flow Indus., Inc. v. Fields
Const. Co.*, 683 F. Supp. 527, 530 (D. Md. 1988) (quoting *Heckrotte v. Riddle*, 224 Md. 591, 595
(Md. 1961)); *see also Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (Md. 1999) (citing
*Wilmington Tr. Co. v. Clark,* 289 Md. 313, 328-29 (Md. 1981).  And so, "[m]ere failure to
perform a contractual duty, without more, is not an actionable tort."  *Mesmer*, 353 Md. at 253
(quoting *Wilmington Tr. Co.*, 289 Md. at 328-29).

C.    **Virginia's Regulation Of Contractors Statute**

Lastly, the parties agree that the Contract was performed in Virginia and that the Virginia
statute that governs the licensing of contractors is found in Sections 54.1-1100 to 54.1-1115 of
the Virginia Code.  *See* Def. Mem. at 5; Pl. Resp. at 4.  Specifically, Section 54.1-1103(A)
provides, in relevant part, that "[n]o person shall engage in, or offer to engage in, contracting
work in the Commonwealth unless he has been licensed under the provisions of this chapter."
Va. Code Ann. § 54.1-1103(A).  In addition, Section 54.1-1103(A) of the Virginia Code requires
that "(i) each contracting party of the joint venture . . . be licensed under the provisions of this

chapter or (ii) a license shall be obtained in the name of the joint venture under the provisions of this chapter." *See id.* at § 54.1-1103(A).

The Virginia Code also provides a "safe harbor" for an inadvertent violation of this licensing requirement. *Skipper v. Landmark Prop. Servs., Inc.*, 97 Va. Cir. 1, 2 (Va. Cir. Ct. 2017). Notably, Section 54.1-1115(C) provides that a construction contract entered into by a contractor lacking a valid Virginia license will be enforceable if an unlicensed contractor "(i) gives substantial performance within the terms of the contract in good faith and (ii) did not have actual knowledge that a license or certificate was required . . . to perform the work for which he seeks to recover payment." Va. Code Ann. § 54.1-1115(C). To determine whether this safe harbor applies, the "sole issue of fact . . . is whether [the party] acted 'without knowledge that a license or certification was required.'" *Skipper*, 97 Va. Cir. at 2. And so, as is the case under Maryland law, a construction contract formed by an unlicensed contractor is generally void and unenforceable in Virginia. *Id.*

## IV.    LEGAL ANALYSIS

Zeitoun has moved for summary judgment in his favor pursuant to Fed. R. Civ. P. 56 for three reasons. First, Zeitoun argues that Sarkissian cannot pursue its breach of contract claim in this civil action, because Sarkissian is an unlicensed contractor in Virginia that knowingly violated Virginia's regulation of contractors statute, and, therefore, its Contract with Zeitoun is unenforceable. Def. Mem. at 4-9. Second, Zeitoun argues that Sarkissian also cannot recover under a theory of quantum meruit, because the Contract is unenforceable. *Id.* at 9. Lastly, Zeitoun argues that Sarkissian's fraudulent misrepresentation claim is precluded under the economic loss doctrine, because this claim is based solely upon economic losses that arose in connection with Zeitoun's alleged failure to perform certain contractual duties. *Id.* at 9-12. And so, Zeitoun requests that the Court enter summary judgment in his favor on all of Sarkissian's claims and dismiss the amended complaint. *Id.* at 12.

Sarkissian counters that Zeitoun is not entitled to summary judgment, because there are material facts in dispute regarding, among other things, the terms of the Contract and whether Virginia's regulation of contractors statute applies to this case. Pl. Resp. at 2-3. In this regard, Sarkissian contends that it did not violate Virginia's regulation of contractors statute, because it properly relied upon the contractor's license held by its joint venture partner to perform work

6

under the Contract and it did not have actual knowledge of the need to obtain a separate contractor's license under Virginia law. *Id*. at 3-8. In addition, Sarkissian argues that it may pursue its fraudulent misrepresentation claim, because the economic loss rule does not apply to this claim. *Id*. at 9-11. And so, Sarkissian requests that the Court deny Zeitoun's motion. *Id*. at 12.

For the reasons discussed below, Sarkissian cannot enforce the Contract in this Court, because the undisputed material facts show that Sarkissian is an unlicensed contractor that had actual knowledge of the need to obtain its own contractor's license at the time that it performed work under the Contract. For this same reason, Sarkissian cannot prevail on its quantum meruit claim against Zeitoun.

In addition, a careful reading of the amended complaint makes clear that Sarkissian's fraudulent misrepresentation claim is based solely upon economic losses that it incurred due to Zeitoun's alleged breach of certain duties under the Contract. And so, the Court GRANTS Zeitoun's motion for summary judgment and DISMISSES the amended complaint. Fed. R. Civ. P. 56.

## A.    Choice-Of-Law

As a preliminary matter, the Court addresses choice-of-law issues raised by Zeitoun's motion for summary judgment. There is no dispute that the oral Contract was formed in Maryland. Am. Compl. at ¶ 19; Def. Mem. at 2. And so, the Court agrees with the parties that Maryland law applies to Sarkissian's breach of contract claims. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672-73 (Md. Ct. Spec. App. 1997) (Maryland courts apply the law of the jurisdiction where the contract was entered into when determining which law controls the enforceability of a contract.).

The Court also reads Zeitoun's motion for summary judgment to raise the issue of whether Sarkissian can enforce the Contract under Maryland law, if Sarkissian is not a licensed contractor in the jurisdiction where the work was performed. Def. Mem. at 4; Def. Reply at 4. Because the parties agree that the work under the Contract was performed in Virginia, the Court's analysis requires consideration of Virginia's regulation of contractors statute. Nonetheless, the Court applies Maryland law to determine whether Sarkissian can pursue its claims in this Court.

7

**B.      Sarkissian Cannot Pursue Its Breach
            Of Contract And Quantum Meruit Claims**

Turning to the merits of Zeitoun's motion for summary judgment, Zeitoun persuasively

argues that Sarkissian cannot pursue its breach of contract and quantum meruit claims in this

case for several reasons.  Def. Mem. at 4-9.

First, a careful reading of the amended complaint and Virginia's regulation of contractors

statute shows that Sarkissian cannot enforce its contract with Zeitoun under Maryland law.  In

this regard, the Court of Appeals of Maryland has long held that:

> [A] contract entered into by an unlicensed person engaged in a trade,
> business or profession required to be licensed, and made in the course of
> such trade, business or profession, *cannot be enforced by such person*, *if it
> appears that the license required by the statute is, in whole or in part, for
> the protection of the public, and to prevent improper persons from engaging
> in such trade, business, or profession.*

*Goldsmith*, 132 Md. at 283 (emphasis supplied); *see also Harry Berenter, Inc*., 258 Md. at 293.

Given this, the Court of Appeals of Maryland has held that "if a statute requiring a license for

conducting a trade, business or profession is regulatory in nature for the protection of the public,

rather than merely to raise revenue, an unlicensed person will not be given the assistance of the

courts in enforcing contracts within the provisions of the regulatory statute because such

enforcement is against public policy."  *Harry Berenter, Inc*., 258 Md. at 293 (holding that a

contractor not licensed pursuant to the Maryland Home Improvement Law could not enforce

mechanic's lien for labor and materials expended in repairs to the home, because the Maryland

Home Improvement Law is a regulatory statute for the protection of the public and is not merely

a revenue measure).

Virginia's regulation of contractors statute is such a statute.  The parties agree that the

relevant licensing statute in this case is Section 54.1-1103(A) of the Virginia Code, prohibiting

anyone from engaging in, or offering to engage in, contracting work in Virginia without a

license.  Va. Code Ann. § 54.1-1103(A).  Specifically, Section 54.1-1103(A) provides, in

relevant part, that:

> No person shall engage in, or offer to engage in, contracting work in the
> Commonwealth unless he has been licensed under the provisions of this
> chapter. . . .   Prior to a joint venture engaging in, or offering to engage in,
> contracting work in the Commonwealth, (i) each contracting party of the

joint venture shall be licensed under the provisions of this chapter or (ii) a license shall be obtained in the name of the joint venture under the provisions of this chapter.

Va. Code Ann. § 54.1-1103(A).[3]

There is no dispute in this case that Sarkissian did not have a Virginia contractor's license, as required under Section 54.1-1103(A), at the time that it performed work under the Contract. Def. Mem. at 2; Pl. Resp. at 7. Given this, the undisputed material facts show that Sarkissian violated Section 54.1-1103(A). And so, Maryland law provides that Sarkissian will not be given the assistance of this Court in enforcing its Contract with Zeitoun. *Harry Berenter, Inc*., 258 Md. at 293**.**

Sarkissian's arguments that Court should consider its breach of contract claim are also unpersuasive. First, the undisputed material facts in this case show that Sarkissian cannot rely upon the safe harbor provision in Section 54.1-1103(A) to avoid the consequences of violating this statute. Under Section 54.1-1115(C), an unlicensed contractor may enforce a construction contract if the unlicensed contractor "(i) gives substantial performance within the terms of the contract in good faith and (ii) did not have actual knowledge that a license or certificate was required . . . to perform the work for which he seeks to recover payment." Va. Code Ann. § 54.1-1115(C).

But this safe harbor provision cannot apply here, because the undisputed material facts show Sarkissian had actual knowledge of the requirement to obtain its own Virginia contractor's license. Notably, Mr. Sarkissian acknowledged during his deposition testimony that Sarkissian could not conduct business in Virginia without its own contractor's license, notwithstanding the fact that North American had a Virginia contractor's license. *See* Def. Mot. Ex. 1 at 18, ECF No. 45-4. Specifically, Mr. Sarkissian testified that he entered into the joint venture agreement with North American in 2017, with the intention of using North American's Virginia license and permits. *Id.* at 23. Mr. Sarkissian also admits in his deposition testimony that Sarkissian could not do business in Virginia under the joint venture agreement. *Id.* at 18.

---

[3] The Court reads Section 54.1-1103(A) to be regulatory in nature and for the protection of the public. *See F. S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 96 (Va. 1952) (holding that this statute is designed to protect the public and that such regulations are a valid exercise of the police power of the state).

It is similarly undisputed that North American, rather than Sarkissian, filed a mechanic's lien related to the Contract on May 28, 2020, again suggesting that Sarkissian was aware of its obligation to obtain a contractor's license to do business in Virginia.  Def. Mem. at 3; *see generally* Pl. Resp.  Given these undisputed material facts, the evidence before the Court shows that Sarkissian was aware of its obligation to obtain a Virginia contractor's license when it performed work under the Contract.  *See Skipper*, 97 Va. Cir. at 2. (holding that to determine whether this safe harbor applies, the "sole issue of fact . . . is whether [the party] acted 'without knowledge that a license or certification was required.'") (citation omitted).

Indeed, while Sarkissian argues that it was not actually aware of the need to obtain its own Virginia contractor's license, Sarkissian points to no facts or evidence to show that it did not have actual knowledge of this requirement.  *See generally* Pl. Resp.  Sarkissian's bald assertions, without more, are not sufficient to rebut Zeitoun's motion for summary judgment on this issue. *Liberty Lobby,* 477 U.S. at 256 (recognizing that it is the nonmoving party's responsibility to confront a motion for summary judgment with evidence to show the existence of a genuine dispute of material fact).

Sarkissian next argues that it may enforce the Contract, because its joint venture partner, North American has a Virginia contractor's license.  Pl. Resp. at 7-8.  But, the plain text of Virginia's regulation of contractors statute makes clear that either, "*each contracting party of the joint venture . . .* [must] be licensed under the provisions of this chapter or (ii) a license shall be obtained in the name of the joint venture under the provisions of this chapter."  *See* Va. Code Ann. § 54.1-1103 (emphasis supplied).  Because there is no dispute that Sarkissian neither obtained its own Virginia contractor's license, nor obtained a Virginia contractor's license in the name of its joint venture with North American, there can be no genuine dispute that Sarkissian has not complied with the terms of Section 54.1-1103(A).[4]

---

[4] Sarkissian's arguments that it did not violate Section 54.1-1103(A), because it operates as a partnership with North American and its joint venture with North American does not fall within the scope of this statute, are also unavailing.  Pl. Resp. at 7.  Again, the plain language of Section 54.1-1103(A) makes clear that, before a joint venture can engage in contracting work, "*each* contracting party of the joint venture shall be licensed."  Va. Code Ann. § 54.1-1103(A) (emphasis supplied).  The Court also does not find any language in Section 54.1-1103(A) that would limit the application of this requirement to new taxable entities, as Sarkisian suggests.  *Id.* at § 54.1-1103(A); Pl. Resp. at 6.

Given this, the undisputed material facts show that Sarkissian violated Virginia's regulation of contractors statute and, as a result, it cannot enforce the Contract in this Court.  And so, the Court GRANTS Zeitoun's motion for summary judgment on this issue and DISMISSES Sarkissian's breach of contract claim.  Fed. R. Civ. P. 56.

For similar reasons, the Court must also dismiss Sarkissian's quantum meruit claim in Count II of the amended complaint.  The Maryland Court of Appeals has held that, to permit an unlicensed contractor to recover on a quantum meruit theory, when the contractor has violated a regulatory statute intended to protect the public, "would defeat and nullify the statute."  *Harry Berenter, Inc.*, 258 Md. at 763.  That is precisely the circumstance presented here.  Allowing Sarkissian to pursue a quantum meruit claim, when it has violated Section 54.1-1103(A), would nullify this statute's requirement that Sarkissian obtain a contractor's license prior to performing any construction work.  And so, the Court also GRANTS Zeitoun's motion for summary judgment on this issue and DISMISSES Count II of the amended complaint.  Fed. R. Civ. P. 56.

### C.      Sarkissian's Fraud Claim is Precluded

As a final matter, the Court must also dismiss Sarkissian's negligent misrepresentation claim, found in Count III of the amended complaint, because contract law, rather than tort law, should govern the resolution of this claim.  This Court has long recognized that "[t]he mere negligent breach [of a contract], absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort."  *Flow Indus., Inc.*, 683 F. Supp. at 530 (quoting *Heckrotte*,224 Md. at 595); *see also Mesmer*, 353 Md. at 253 (citing *Wilmington Tr. Co.*, 289 Md. at 328-29.  And so, this Court has previously dismissed a negligent misrepresentation claim brought by a construction contractor that was based upon statements made in connection with the performance of the contract.  *Flow Indus.*, 683 F. Supp. at 530 (Where a controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship, it is plainly contract law which should provide the rules and principles by which the case is to be governed.).

Here, Sarkissian alleges that Zeitoun, "by false and misleading statements with intent to deceive[, did] promise [Sarkissian] that if he executed the subject waiver forms, he would cash checks issued by Landlord and pay $150,000.00 [to Sarkissian]."  Am. Compl. at ¶ 30.  Given this, the amended complaint makes clear that Sarkissian's negligent misrepresentation claim

11

concerns purely economic losses allegedly caused by Zeitoun's statements made during the course of their contractual relationship.  *Id.* at ¶¶ 15-18; 28-34.  Because Sarkissian's claim is properly resolved as contract claim, rather than an actionable tort, the Court GRANTS Zeitoun's motion for summary judgment on this final issue and DISMISSES this claim.  Fed. R. Civ. P. 56; *Mesmer*, 353 Md. at 253.

## V.      CONCLUSION

In sum, the undisputed material facts in this case show that Sarkissian cannot enforce its Contract with Zeitoun, because it violated Virginia's regulation of contractors statute in connection with the performance of the Contract.  For this same reason, Sarkissian cannot prevail on its quantum meruit claim.

In addition, a careful reading of the amended complaint makes clear that Sarkissian's fraudulent misrepresentation claim is based solely upon economic losses that it allegedly incurred due to Zeitoun's alleged breach of certain duties under the Contract.  In reaching this decision to dismiss Sarkissian's claims, the Court is mindful of the fact that Sarkissian has experienced an unfortunate loss of income, due to Zeitoun's failure to pay for all work performed under the Contract.  But, public policy warrants that Sarkissian not be afforded the aid of the Court in enforcing the Contract at issue.

And so, for the foregoing reasons, the Court:

1.  **GRANTS** Zeitoun's motion for summary judgment; and
2.  **DISMISSES** the amended complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge